UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTICT OF MICHIGAN
SOUTHERN DIVISION

VIRGIL MITCHELL, #349178,

                Plaintiff,                Case No.: 09-cv-11468

      v.                            Honorable Arthur J. Tarnow
                                              Magistrate Judge David R. Grand

MICHIGAN DEPARTMENT OF
CORRECTIONS, *et al.*,

                Defendants.

_____/

## REPORT AND RECOMMENDATION TO GRANT IN PART, AND DENY IN PART, DEFENDANTS' MOTION TO FOR SUMMARY JUDGMENT (Doc. #92)

Before the court is a Motion for Summary Judgment (Doc. #92) filed by the following seventeen defendants: Armstrong, Bellinger, Caruso, P. Conerly, V. Conerly, David, DeWitt, Havelka, Lafler, Main, McCabe, Norwood, Patrick, Renico, Rivard and Williams and Darmody.[1] The motion has been referred to this court for a report and recommendation pursuant to 28 U.S.C. §636(b)(1)(B). (Doc. #119). The 16 Defendants argue that their motion should be granted, and plaintiff Virgil Mitchell's claims against them should be dismissed, because Mitchell failed to exhaust his administrative remedies against them. Defendant Darmody makes the same argument with respect to certain of the claims against him, and argues that others are barred by the statute of limitations. For the reasons set forth below, the court recommends that the Motion for Summary Judgment be granted as to the 16 Defendants, and granted in part, and denied in part, as to Defendant Darmody.

---

[1] The first sixteen of the listed defendants all seek dismissal for the same reason and will be referred to as the "16 Defendants." The seventeenth defendant, Darmody, seeks dismissal for a different reason and will be referred to by his name.

I.  BACKGROUND

    A.  **The First Cell Door Incident**

At the time of the events giving rise to the complaint in this matter, Mitchell was incarcerated at the St. Louis Correctional Facility in St. Louis, Michigan. Mitchell alleges that on October 11, 2004, Defendant Darmody, a prison corrections officer, repeatedly slammed Mitchell's cell door on Mitchell's back, causing him serious injuries. (Cplt., ¶ 3). Mitchell also alleges that prison and medical personnel showed deliberate indifference to his medical needs by denying timely and adequate medical care for the injuries he sustained, including: a spinal disc bulge and/or rupture; loss of muscle strength in his arms and legs; numbness in his back, hands and legs; and pain when attempting to walk or lie flat. (*Id.* at ¶¶ 4-6).

According to documents which Mitchell apparently intended to attach to his complaint[2] and which Defendants submitted as part of their motion, the same day as the alleged incident, Mitchell filed an initial, or "Step I" grievance with the Michigan Department of Corrections ("MDOC"), related to Darmody's alleged conduct. (Doc. #92-3, p. 6). That grievance was assigned No. SLF 0410-270617a (the "First Grievance"). Mitchell's First Grievance was denied on the merits on October 22, 2004. (*Id.*). Mitchell appealed this denial, filing a "Step II" grievance, which was denied on the merits on November 15, 2004. (*Id.*). Mitchell appealed again, filing a "Step III" grievance, which was denied on the merits on April 1, 2005. (*Id.*).

On October 28, 2004, Mitchell filed another grievance, which was assigned No. SLF 0411-286712e3 (the "Second Grievance"). (Doc. #92-4, p. 14) The Second Grievance states that it "is being filed against Health Care Svp. S. Teed for failure to provide effective medical

---

[2] Mitchell's complaint cites to a number of exhibits, none of which are actually included in that filing, but many of which are generally identifiable from the context in which they are referenced, including his various grievances.

2

treatment…" (*Id.*) It also mentions Nurse Lawrencel and the care she provided him, and states that she "was told that c/o Darmody slammed cell door deliberately multiple times on grievant…" (*Id.*) Mitchell's Step I grievance was denied on the merits on November 16, 2004. (*Id.*). Mitchell filed a Step II grievance on December 6, 2004, which was denied on its merits on January 28, 2005. (*Id.*). Mitchell then filed a Step III grievance which the MDOC received on December 21, 2006, and responded to, on the merits, on August 21, 2007.[3] (*Id.*).

### B.     The Second and Third Cell Door Incidents

Mitchell alleges that on November 13, 2004, Darmody was responsible for a separate cell door incident similar to the first one, though in this second instance, Mitchell claims he escaped being struck by the door. (Cplt., ¶11) That same day, Mitchell filed a grievance against Darmody related to this second cell door incident which was assigned No. SLF 0411-304717a (the "Third Grievance"). (Doc. #92-6, pp. 2-3) Mitchell also alleges that a third cell door incident by Darmody took place on August 12, 2005, and that he filed two grievances, Nos. SLF-0509193712e1 and SLF-0511255628e, (the "Fourth and Fifth Grievances") regarding Darmody's actions and the medical care he received. (*Id.*, Cplt. ¶¶ 18, 21; Docs. #92-7, 92-8 (both indicating an August 13, 2005 filing date)). As discussed below, there is no evidence that Mitchell took the Third, Fourth or Fifth Grievance[4] all the way through the grievance process.

---

[3] It is unclear from the record when, exactly, Mitchell filed his Step III grievance, so it is impossible to know whether or not it was timely filed under the MDOC's grievance policies. However, the court must draw all inferences in favor of the non-moving party at this stage, and defendants do not argue that Mitchell failed to exhaust his remedies through an untimely filing of his Step III grievance. Therefore, the court will assume it was timely filed. Moreover, because the MDOC addressed the grievance on its merits, it waived any claim that the Mitchell's Step III grievance was untimely filed. *See e.g., Broder v. Correctional Medical Services, Inc.*, 2008 WL 704229, *2 (E.D. Mich. 2008).

[4] Mitchell filed numerous other grievances against the 16 Defendants which the parties now concur were not exhausted. *See infra*, p. 5.

3

### C.     Procedural History of Mitchell's Claims

On April 20, 2009, Mitchell filed the instant § 1983 complaint against a multitude of defendants, including the 16 Defendants and Darmody, alleging violations of his Eighth Amendment rights related to the events described above. (Doc. #1). In short, Mitchell's complaint seeks compensation for the two cell door incidents, the medical treatment he did and did not receive, and the manner in which he was treated by prison staff after filing his various grievances. (*Id.*) According to Darmody, prior to filing this action, Mitchell had filed two separate actions against him in this court related to the cell door incidents; Case No. 07-cv-11637, which was dismissed without prejudice on August 20, 2007, and Case No. 08-cv-12579, which was dismissed without prejudice on July 31, 2008. (Doc. #38, p. 13).

On August 27, 2009, a number of the defendants, including most of the 16 Defendants and Darmody, filed a motion to dismiss Mitchell's instant complaint based on, among other things, exhaustion of administrative remedies and statute of limitations grounds. (Docs. #34, 38). The District Court denied that motion for two principal reasons. As to all of the movants (and all of the grievances), the court held that because the defendants "fail[ed] to establish what specific grievance policy was in place at the time Plaintiff filed his grievances and whether Plaintiff fully exhausted his claims," the court was "unable to conclude when Plaintiff's claims were exhausted for statute of limitations purposes." (Doc. #59, p. 3). As to Mitchell's Third Grievance against Darmody (regarding the November 13, 2004 cell door incident), the court found that Darmody had not "demonstrated [] that Plaintiff has failed to exhaust his administrative remedies." (*Id.* at 4)

On October 8, 2010, the 16 Defendants and Darmody filed the instant motion for summary judgment. The Defendants again claim that Mitchell failed to exhaust his

4

administrative remedies on all but the First and Second Grievance against Darmody (and two others not made against any of the 16 Defendants or Darmody). (Doc. #92). They support that claim with documentation the District Court had previously found to be lacking: (1) Mitchell's grievance records; (2) the affidavit of MDOC Office of Legal Affairs administrator, Richard Stapleton, and the "MDOC Step III Grievances by Prisoner" report attached thereto; and (3) the MDOC grievance policies in force during the relevant times. (Doc. #92, p. 2; Doc. #87-2). The 16 Defendants and Darmody also raise statute of limitations arguments. The Defendants argue that "because the last event referenced in the Complaint occurred on August 12, 2005…the statute of limitations expired on August 12, 2008, for every Defendant except Darmody," the difference being Darmody's concession that Mitchell exhausted his remedies against Darmody on the First and Second Grievance, and was therefore entitled to some amount of tolling. (Doc. #92, p. 8).

In turn, Darmody argues that under MDOC Policy Directive ("PD") 03.02.130, ¶S, which provides that the "total grievance process … shall generally be completed within 120 calendar days…", "once 120 days expired from October 28, 2004 [the date Mitchell commenced his Second Grievance], Mitchell exhausted the grievance process" and had three years – until February 28, 2008 – to file his lawsuit. (*Id.*, pp. 8-9) (citing PD 03.02.130, ¶S (eff. July 9, 2007)).

Mitchell concedes in his response that he failed to exhaust his administrative remedies with regard to the 16 Defendants, and does not dispute their dismissal. (Doc. #116, p. 1) Nor does Mitchell argue that he exhausted his administrative remedies with respect to the Third, Fourth or Fifth Grievance against Darmody. However, Mitchell disputes Darmody's interpretation of PD 03.02.130, and argues that his time to file suit was tolled pending the

5

relevant administrative grievance process, *i.e.*, until he received the MDOC's Step III response to his Second Grievance. Having received that response on August 21, 2007, Mitchell argues that his complaint, filed on April 20, 2009, was timely.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). In evaluating a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party. *Pack v. Damon Corp.*, 434 F.3d 810, 813 (6th Cir. 2006) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). The moving party bears the initial burden of demonstrating that no dispute of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party satisfies this burden, the non-moving party must then come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The court must ultimately determine whether the evidence presented constitutes a sufficient factual disagreement such that the case could not be determined as a matter of law. *Anderson*, 477 U.S. at 251-52.

## III.    ANALYSIS

### A.     Defendants' Motion for Summary Judgment Should be Granted as to the 16 Defendants and as to Darmody Only with Respect to the Third, Fourth and Fifth Grievances

Mitchell concedes that he failed to exhaust his administrative remedies with regard to the 16 Defendants, and does not dispute their dismissal. (Doc. #116, p. 1) Accordingly, the court

recommends that the instant summary judgment motion be granted as to them.

Although Mitchell did not make such an express concession regarding any of his claims against Defendant Darmody, Defendants' motion specifically argues that Mitchell failed to exhaust his administrative remedies with respect to his Third, Fourth or Fifth Grievance against Darmody. (Doc. #92, pp. 2-3). That portion of the motion is adequately supported by the documentary evidence described above. Most notably, the Affidavit of Richard Stapleton, an MDOC Office of Legal Affairs administrator, and the "MDOC Step III Grievances by Prisoner" report attached thereto, establishes that the MDOC did not receive a Step III grievance for Mitchell's Third, Fourth or Fifth Grievances against Darmody. (*Id.*, p. 2 (citing to Doc. #87-2)). If true, Mitchell would have failed to properly exhaust his administrative remedies for those grievances, and Darmody would be entitled to summary judgment on claims related to the events described therein. *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).

Mitchell's response does not address the Stapleton affidavit or the Step III report, and he does not contend that he filed a Step III appeal for any of those three grievances. Accordingly, to the extent Mitchell's complaint asserts claims against Darmody related to the subject matter of the Third, Fourth or Fifth Grievance, the court recommends that summary judgment be granted to Darmody. *See King v. Bell*, 2009 WL 4646079, at *3 (E.D. Mich. Dec. 7, 2009) (summary judgment granted for failure to exhaust remedies when MDOC grievance database showed no Step III filing had been made and plaintiff provided no evidence to rebut that showing).

### B. Darmody's Motion for Summary Judgment with Respect to the First and Second Grievances Should be Denied

Having disposed of Mitchell's claims against the 16 Defendants and his claims against Darmody related to the Third, Fourth and Fifth Grievances, all that remains of the instant summary judgment motion is Darmody's argument that the statute of limitations bars Mitchell's

remaining claims against him. Though those claims seem to arise principally in connection with Mitchell's First Grievance, Darmody focuses on the Second Grievance, which he states: "named health care personnel … and Darmody." (Doc. #92, p. 8; *see also* Doc. #118, p. 1 ("At issue is [the Second Grievance which] Mitchell submitted [] on October 28, 2004.")).[5]

Darmody makes only one argument – that pursuant to MDOC PD 03.02.130, ¶S's statement that the "total grievance process … shall generally be completed within 120 calendar days…", Mitchell's three-year statute of limitations period in which to file this action commenced on February 28, 2005, 120 days after he filed his Second Grievance on October 28, 2004. (Doc. #92, pp. 8-9). Darmody concludes that since Mitchell filed this action after February 28, 2008, his complaint was untimely. (*Id.*) Darmody's argument lacks merit because the statute of limitations applicable to Mitchell's claims was tolled during the entire grievance process despite the fact that that process exceeded the time generally allotted under the MDOC grievance policy.

### 1. MDOC Grievance Policy

The MDOC grievance policy includes a number of specific deadlines applicable both to the inmate and to the prison staff. (Doc. #92-15, PD 03.02.130 ). Specifically, the inmate must file a Step I grievance within five days after attempting to resolve the dispute verbally. (*Id.*, ¶V). Prison staff must respond, in writing, to a Step I grievance within fifteen days, unless an extension is granted. (*Id.*, ¶X). If the inmate is not satisfied with the response received, or does not receive a response within fifteen days, he may file a Step II appeal within ten days thereafter. (*Id.*, ¶BB). Prison staff again has fifteen days to respond absent an extension. (*Id.*, ¶CC). If the

---

[5] The court notes that in Defendants' Motion to Dismiss, Darmody made a separate argument regarding the timeliness of Mitchell's claims related to his First Grievance. (Doc. #38, p. 13). However, Darmody's instant motion does not make that same argument, and the court declines to address it here.

prisoner is not satisfied with the response at Step II, or does not receive a response within the allotted time, he may proceed to Step III in similar fashion, appealing this time to the Prison Affairs Section and having ten days to procure the form and another ten to submit it. (*Id.*, ¶FF).

Unlike the specific deadlines for prison staff to respond at the Step I and Step II stages, PD 03.02.130 contains no specific time frame for Prisoner Affairs to respond to a Step III grievance. Instead, it notes that the "total grievance process from the point of filing a Step I grievance to providing a Step III response shall *generally* be completed within 120 calendar days unless an extension has been approved in writing by the Grievance Coordinator at Step I and/or Step II." (*Id.*, ¶S) (emphasis added).[6]

### 2. Applicable Statute of Limitations

42 U.S.C. § 1983 does not contain a statute of limitations provision. Rather, the Supreme Court has held that in such cases courts must look to state law to determine the relevant limitations period. *Wilson v. Garcia*, 371 U.S. 261, 267 (1985). The Sixth Circuit has found that the appropriate limitations period is a three-year period borrowed from Michigan personal injury law. *Wolfe v. Perry*, 412 F.3d 707, 714 (6th Cir. 2005). However, to determine when this limitation period begins, the court must look to federal law, which states that the statute of limitations begins to run "when the plaintiff knows or has reason to know of the injury . . . ."

---

[6] A previous iteration of the PD, enacted on December 19, 2003, was in place at the time of the incidents that gave rise to the First and Second Grievance. The December 2003 PD has slightly different time limits for the various "Steps" and also for the time limit afforded the entire process, stating that the "total grievance process from the point of filing a Step I grievance to providing a Step III response shall be completed within 90 calendar days unless an extension has been approved . . . at one of the steps in the grievance process." (Doc. #92-13, ¶U). Defendants attach this PD to their motion, and they argue, for purposes of failure to exhaust, that this policy was the applicable one to this action. (Doc. #92, p. 5). However, with respect to Defendant Darmody's statute of limitations argument, Defendants only cite to, and make arguments regarding, the July 2007 version and the 120-day time limit, which also includes the word "generally." (*Id.* at 8; Doc. #118, p 2). Thus, this is the version of the policy the court will apply here. (*See* Docs. #92-13, 14 and 15).

*McCune v. Grand Rapids*, 842 F.2d 903, 905 (6th Cir. Mich. 1988).  Under FRCP 6(a)(1)(A), a court must "exclude the day of the event that triggers the period" when calculating the limitations period.  Here, the limitations period on Mitchell's Second Grievance against Darmody began to run on October 12, 2004 (the day after Darmody's challenged conduct took place), and thus would have expired on October 12, 2007 unless Mitchell could show that the statute was tolled for a sufficient length of time to render his April 20, 2009 complaint timely.

### 3. PLRA Exhaustion Requirements and Tolling

Mitchell's case was brought pursuant to the Prisoner Litigation Reform Act ("PLRA"), which mandates that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. 1997e(a).  To properly exhaust his remedies, a prisoner must "compl[y] with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford*, 548 U.S. at 90-91.  Since proper exhaustion of administrative remedies is required by the PLRA before a prisoner can file suit, the time it takes to exhaust those remedies tolls the applicable statute of limitations. *Brown v. Morgan*, 209 F.3d 595, 596 (6th Cir. 2000).

Darmody interprets the 120-day time period in which the "total grievance process from the point of filing a Step I grievance to providing a Step III response shall *generally* be completed" as a fixed end-point for the grievance process.  In other words, he argues that a prisoner properly at the Step III stage has exhausted his administrative remedies, and that his statute of limitations begins to run, 120 days after he files his grievance, even if the prison has not provided a Step III response by that time.  Thus, in this case, Darmody argues that the statute

10

of limitations was tolled only for 120 days from October 28, 2004, when Mitchell filed the Second Grievance, until February 28, 2005. (Doc. #92, p. 14). Darmody cites no authority to support that proposition, and at least two Eastern District of Michigan courts have rejected that exact argument. *See Vartinelli v. Pramstaller*, 2010 WL 5330487 (E.D. Mich. Dec. 1, 2010) *adopted by* 2010 WL 5330484 (E.D. Mich. Dec. 21, 2010); *Davis v. Straub*, 2011 WL 2433398 (E.D. Mich. May 10, 2011) *adopted by* 2011 WL 2415357 (E.D. Mich. June 13, 2011).

In *Vartinelli*, as here, the completion of the plaintiff's grievance procedure extended beyond the 90 days then allotted by the MDOC PD. 2010 WL 5330487, at *4. Ultimately, MDOC addressed plaintiff's grievance on the merits despite the fact that it was beyond the time allotted by the policy. *Id.* The magistrate judge considered and rejected several cases from the Western District of Michigan that had held that the time limit imposed by MDOC for the completion of the grievance process is the outer bounds of any tolling of the statute of limitations, whether or not the grievance is ultimately addressed on the merits. *Id.* at *12. In her reasoning for rejecting those cases, the magistrate judge in *Vartinelli* found that because MDOC failed to follow its own policies in limiting the process to 90 days, and because it ultimately addressed plaintiff's grievance on its merits, "the court should also consider the process as it actually occurred and deem this matter tolled during the entire grievance process." *Id.* at *12-13 (citing *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325-26 (6th Cir. 2010). The magistrate judge further noted that "if tolling is found to have stopped after 90 days, defendants will be rewarded for failure to follow MDOC policies and the benefits of exhaustion will be lost." *Id.* at *13. The District Court, in adopting the magistrate judge's recommendation, found that allowing "a prisoner [to] file a civil action before exhausting all available administrative remedies if the entire grievance process is not completed within ninety calendar days," would allow prisoners to

11

"circumvent the grievance process [which] would be contrary to the reasons exhaustion of administrative remedies is required."  2010 WL 5330484, at *2.

In *Davis*, under similar facts, the magistrate judge agreed with the reasoning of *Vartinelli*, and held that an argument that the tolling period should be limited to the time frame set out by MDOC in its grievance policy "is contrary to sound policy: if a grievance did not toll the statute of limitations clock during the entire grievance process, the prison, upon receiving a grievance could, through its own dilatory practices, wait out the limitations period."  2011 WL 2433398, at *7.  The District Court accepted this point without question.  2011 WL 2415357, at *1.

Darmody counters that under his argument, a prisoner could simply file his lawsuit upon the expiration of 120 days after filing a grievance, thus eliminating the concerns expressed by the *Vartinelli* and *Davis* courts about the effect of any "dilatory practices" by the prison.  But Darmody's position is flawed in multiple respects.

First, the use of the word "generally" in Subsection S of the PD – that the "total grievance process from the point of filing a Step I grievance to providing a Step III response shall *generally* be completed within 120 calendar days…" – precludes Darmody's interpretation of the 120-day period as an absolute limit.  Moreover, given that the PD contains specific deadlines for the grievant to act at each "step," and given Subsection S's reference to "providing a Step III response" as the completion point of the grievance process, the reasonable interpretation is that the 120-day period is merely a guide *to the prison* about the expediency with which it should endeavor to complete the grievance process.[7]

---

[7] Even if the court were to find that, despite Darmody's concession, the applicable PD was the December 19, 2003 version, which did not include the term "generally," this court's recommendation would not change.  Even absent the word "generally," the 90-day period's meaning is sufficiently ambiguous that it would be unreasonable and unfair to construe it as a marker for the start of the prisoner's statute of limitations period.  Moreover, the other reasons

Second, Darmody's current argument contradicts his own prior position regarding the timeliness of Mitchell's claims based on his First Grievance. In Defendants' motion to dismiss, Darmody argued that the statute began to run when the MDOC issued its Step III response, even though that occurred more than 120 days after Mitchell filed the related grievance. (Doc. # 38, p. 8) ("The grievance process was completed on the alleged October 11, 2004 incident on April 1, 2005 [when the MDOC gave its Step III response]…This means that the statute of limitations began to run on April 1, 2005, giving the plaintiff until April 1, 2008 to pursue claims based on the event.").

Finally, Darmody's argument runs counter to the purpose of the exhaustion policy whose benefits "include allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock*, 549 U.S. 199, 219 (2007). *See also Vartinelli*, 2010 WL 5330484, at *2; *Davis*, 2011 WL 2433398, at *7. The grievance system, and the legal system as a whole, benefit when the entire administrative process is allowed to be completed before a prisoner's statutory time period to file a lawsuit begins to run.

In sum, the court rejects Darmody's argument that the statute of limitations began to run on February 28, 2005, 120 days after Mitchell filed the Second Grievance. Instead, the court finds that the statute of limitations was tolled during the entire grievance process, and thus did not begin to run until after August 21, 2007 when the MDOC provided its Step III response.

---

stated below for tolling the statute of limitations during the grievance process would still apply in full force. And, the 2003 PD was specifically considered by the *Vartinelli* court in a ruling which the court finds persuasive.

(Doc. #92-4).[8] Accordingly, Darmody's motion for summary judgment should be denied.

## IV. CONCLUSION

For the foregoing reasons, the court **RECOMMENDS** that Defendants' motion for summary judgment be **GRANTED** as to defendants Armstrong, Bellinger, Caruso, P. Conerly, V. Conerly, David, DeWitt, Havelka, Lafler, Main, McCabe, Norwood, Patrick, Renico, Rivard and Williams. The court further **RECOMMENDS** that, as to Defendant Darmody, the motion for summary judgment be **GRANTED** as to claims based on Grievance Nos. SLF 0411-304717a, SLF-0509193712e1, and SLF-0511255628e and **DENIED** as to claims based on Grievance Nos. SLF 0410-270617a and SLF 0411-286712e3.

Dated: January 24, 2012         s/David R. Grand
Ann Arbor, Michigan             DAVID R. GRAND
                                United States Magistrate Judge

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation, any party may serve and file specific written objections to the proposed findings and recommendations set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for

---

[8] The court takes Darmody's point, raised in his reply brief (Doc. #118, pp. 2-3), that under Mitchell's interpretation (and the one recommended by the court), the MDOC conceivably could forever delay a prisoner's exhaustion of his administrative remedies by not providing him with a Step III response. While there may one day be a factual scenario which requires the court to address that hypothetical situation, it is not this case, where Mitchell waited to commence this litigation until after he received the MDOC's Step III response.

14

the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 24, 2012.

                                                           s/Felicia M. Moses
                                                        FELICIA M. MOSES
                                                        Case Manager